IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**JOHN D. BARTLETT**,

      Plaintiff,

vs.                                                    No. **2:10-CV-00138 MCA/LAM**

**KENNETH CRAMER**, in his individual and
official capacity as an officer of the
Lincoln County Sheriffs Office and Lincoln County
Narcotics Enforcement Unit, and
**JOSH SNODGRASS**, in his individual and
official capacity as an officer of the
Ruidoso Police Department and
Lincoln County Narcotics Enforcement Unit,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendant Kenneth Cramer's Motion For Partial Summary Judgment On Plaintiff's Municipal Liability Claims* [Doc 66], *Defendant Snodgrass' Motion To Dismiss On Ground Of Qualified Immunity* [Doc 65], and *Defendant Kenneth Cramer's Motion For Partial Summary Judgment On The Basis Of Qualified Immunity* [Doc 67]. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court **grants** *Defendant Kenneth Cramer's Motion For Partial Summary Judgment On Plaintiff's Municipal Liability Claims* [Doc 66]; the Court **denies** *Defendant Snodgrass' Motion To*

*Dismiss On Ground Of Qualified Immunity* [Doc 65] **and** *Defendant Kenneth Cramer's*

*Motion For Partial Summary Judgment On The Basis Of Qualified Immunity* [Doc 67].

**I.      BACKGROUND**

According to the undisputed facts, Officer Josh Snodgrass (Defendant Snodgrass) was hired by the Ruidoso Police Department (RPD) in December 2007.  Prior to becoming a police officer, Defendant Snodgrass served in the Coast Guard for six years. His first assignment with the RPD was as an undercover officer, working with the Lincoln County Narcotics Enforcement Unit (LCNEU).  His supervisor with the LCNEU was Commander Kenneth Cramer (Defendant Cramer).

During his time as an undercover officer, Defendant Cramer introduced Defendant Snodgrass to a confidential informant (CI).  On March 5, 2008, the CI and Defendant Snodgrass went to the home of Rogelio Lopez, in order to make a controlled methamphetamine buy.  Lopez made a phone call and a man named "John" later arrived and sold methamphetamine to Defendant Snodgrass.  After the buy, Defendant Snodgrass met Defendant Cramer, gave him the drugs, the first name of the seller, and a description of the truck the seller drove.

Defendant Cramer contacted the CI and asked for "John's" last name, and the CI informed Defendant Cramer that he *thought* the name was "Bartlett."  Defendant Cramer performed a search on his computer data base and after conducting the computer research, he drafted a statement of probable cause, with the name "John A. Bartlett," and accompanying identifying information for John A. Bartlett.  On July 1, 2008, Defendant

Snodgrass signed the statement of probable cause drafted by Defendant Cramer.  In early

2009, John A. Bartlett was arrested.  It was soon discovered, however, that John A.

Bartlett was the wrong man, and he was released.

Defendant Cramer then drafted a second statement of probable cause, identifying

"John Bartlett" as the drug dealer.  This statement of probable cause contained some of

the old references to John A. Bartlett, but contained the identifying information for a John

D. Bartlett, Plaintiff, who was subsequently arrested and charged with the sale of the

drug.  Defendant Snodgrass testified at a preliminary hearing and identified  John D.

Bartlett as the person who sold him methamphetamine.  As a result, John D. Bartlett was

bound over for trial.  Eventually, the charges against John D. Bartlett were also dropped.

Although Defendant Snodgrass continues to maintain that it was John D. Bartlett who

sold the methamphetamine, Plaintiff provided evidence that a third man was the drug

dealer and confessed to the crime after being granted immunity from prosecution..

Both John A. and John D. filed a *Complaint For Civil Rights Violation, False*

*Arrest, And Abuse Of Process* [Doc 1] in this Court.  John A.'s claims have settled, and

only John D. remains as a plaintiff.[1]  Plaintiff's *Complaint* raises three claims:  (1) for

violation of his civil rights contrary to 42 U.S.C. § 1983; (2) for false imprisonment and

arrest, and (3) for negligent hiring and training of employees.  Defendant Snodgrass has

filed *Defendant Snodgrass' Motion To Dismiss On Ground Of Qualified Immunity* [Doc

65] and Defendant Cramer has filed *Defendant Kenneth Cramer's Motion For Partial*

---

[1]  Accordingly, all references to "Plaintiff" refer to John D. Bartlett.

*Summary Judgment On The Basis Of Qualified Immunity* [Doc 67] and *Defendant*

*Kenneth Cramer's Motion For Partial Summary Judgment On Plaintiff's Municipal*

*Liability Claims* [Doc 66].

## II.      APPLICABLE STANDARDS AND ANALYSIS

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for "failure to

state a claim upon which relief can be granted."  Defendant Snodgrass brings his *Motion*

under Rule 12(b)(6), but also attaches to his *Motion* a great deal of evidence apart from

the pleadings.  Plaintiff similarly asks the Court to consider a quantity of evidence apart

from the pleadings.  To the extent that both parties' papers refer to other material outside

of the pleadings, the motion is reviewed as one for summary judgment pursuant to Fed. R.

Civ. P. 56.  See Fed. R. Civ. P. 12(b).  Thus, all three pending *Motions* will be considered

motions for summary judgment under  Rule 56.

Summary judgment under Fed. R. Civ. P. 56© "shall be rendered forthwith if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56©.

"When a motion for summary judgment is made and supported as provided in this rule, an

adverse party may not rest upon the mere allegations or denials of the adverse party's

pleading. . . ."  Fed. R. Civ. P. 56(e).  Rather, "the adverse party's response . . . must set

forth specific facts showing that there is a genuine issue for trial."  Id.  Judgment is

appropriate "as a matter of law" if the nonmoving party has failed to make an adequate

showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

The pending *Motions* request dismissal of Plaintiff's Section 1983 personal capacity and official capacity claims. [Doc 65 at 1] Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. This Court will first address the claims in turn.

**A.**   <u>**Official Capacity Claim**</u>

Our Circuit has recognized that "[s]uing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent." <u>Porro v. Barnes</u>, 624 F.3d 1322, 1328 (10th Cir. 2010).   A municipality may be held liable under Section1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. <u>See</u> <u>Monell v. Dep't of Soc. Servs.of City of N.Y.</u>, 436 U.S. 658, 694 (1978); <u>see also</u> <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1307 (10th Cir. 1998).  In order to prevail on a claim of municipal liability, a plaintiff must prove his or her constitutional injury was inflicted "pursuant to government policy" or custom. <u>Monell</u>, 436 U.S. at 691.  In particular, a plaintiff must show the existence of a municipal custom or policy, and a direct causal link between the custom or policy and the alleged violation. <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989). Where a plaintiff seeks to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights, he also must demonstrate that the municipal action was taken with deliberate indifference to its known or obvious consequences. <u>See</u> <u>Bd. of County Comm'rs of BryanCounty v. Brown</u>, 520 U.S. 397, 407 (1997) (<u>Brown</u>).

Generally speaking, a municipality can be liable in three possible ways:  (1) by showing an unconstitutional policy or acts officially sanctioned or ordered by the municipality's final policy-making authority; (2) by showing custom established by proof of knowledge and acquiescence; and (3) by showing failure to train.  Plaintiff seeks only to

employ the third theory, and according to those principles, inadequacy of training serves as the basis for Section 1983 liability only if the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.  See City of Canton, 489 U.S. at 388.  In the failure-to-train context, our Circuit has set forth the following parameters for analysis:

> [A plaintiff] must demonstrate, among other things, that the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of [his due process] rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need for additional training. . . .  [A] plaintiff must identify a specific deficiency that was obvious and closely related to his injury, so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury. . . .

Porro, 624 F.3d at 1328 (some alterations in original) (internal quotation marks and citations omitted).  The Supreme Court of the United States recently clarified this standard, explaining that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011).  In a "narrow range of circumstances," however, a pattern of similar violations might not be necessary if the decision not train "could reflect the city's deliberate indifference to the highly predictable consequence, namely, violations of constitutional rights."  Id. at 1361 (internal quotation marks and citation omitted).

Plaintiff contends that Defendants' initial false identifications of John A. and subsequent false identifications of John D. in the warrant affidavits were the result of specific deficiencies in training that caused John D.'s injuries—his arrest and the bringing of charges against him. Plaintiff further argues that Defendants were knowingly insufficiently trained to run or participate in undercover operations and that the reason for the failure to train was that Defendant Snodgrass' assignment was temporary—only six months—and that it was not worth the effort of locating a class for him because he would not be in the position for very long. [Doc 71 at 9-10] Defendants respond that they were sufficiently trained as police officers and that Plaintiff has provided no evidence to support his failure to train theory. [Doc 74 at 3]

Plaintiff cites a great deal of evidence that Defendants were not trained to operate undercover, including the testimony of Defendant Cramer, who described Defendant Snodgrass' undercover training in the following terms:

> It was very minimal. He had a law enforcement background so we were not particularly concerned about his law enforcement credentials. The kinds of things we talked about where to find what you were looking for, what kind of things to say, what kind of things not to say; you know, let your hair grow, you know, be a kid. It was not training in the sense that we sat him in a classroom for eight, 12, 14 hours, whatever, and indoctrinated him with a particular way of doing things.

[Doc 69-6 at 6] Defendant Cramer went on to testify that he, himself, was not qualified at the time to train Defendant Snodgrass and that the lack of training was cause for concern. [Id. at 6-7] Defendant Cramer was not sure whether he discussed his concerns with a

superior, but he "certainly" thought something along the lines of "we've got a new cop in,

he's green at this CI stuff and I'm not really in a position to train him."  [Id. at 8]  When

asked why Defendant Snodgrass did not receive more training, Defendant Cramer stated that

"[a]vailability is one thing."  [Id. at 12]  He continued:

> We have a hard time getting officers into those classes because they're not
> given very often.  And the second factor is that he wasn't gonna be with us for
> more than six months, that was the initial agreement, so there was little or no
> point to doing any extensive training for a job he was only gonna have for six
> months.

[Id. at 13]

Defendant Snodgrass confirmed that before he began work with the LCNEU, he had

never had any training in undercover police work, nor could he recall any training in drug

interdiction or working with confidential informants.  [Doc 69-1 at 3]  Defendant Snodgrass

further testified that when he agreed to do undercover work, he was given no formal training

and although the other two members of the unit, Defendant Cramer and an Officer Barnett,

explained how the "unit worked," they gave him no instruction on undercover operations.

Defendant Snodgrass was told that he was supposed to "go out and buy drugs."  [Doc 65-1

at 5]  The unit did not identify targets.  Instead, Defendant Snodgrass was directed to "[s]tart

talking to people and feeling them out, seeing if I could—seeing if they—if I even thought

they were the type of people that would do something like that."  [Id.]  Defendant Snodgrass

was asked, "And were you supposed to do this just based upon—did they give you some kind

after description or a profile of the people you were looking for or just you were just—," and

he answered, "No, it was just based on my experience."  [Id.]

Troubling as this evidence is, particularly concerning the safety of Defendant Snodgrass, see United States v. Verdin-Garcia, 516 F.3d 884, 891 (10th Cir. 2008) (noting that "undercover work presents an exceedingly grave risk of harm or death to the agent if he is discovered;" that "[t]he most dangerous undercover assignments involve efforts to infiltrate various elements of the narcotics trade;" and that "[t]he largest percentage of officers who are hurt or killed on duty have been involved in undercover narcotics operations." (internal quotation marks and citation omitted)), Plaintiff does not link this failure to train with the alleged constitutional violation.  See Brown, 520 U.S. at 404 ("The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.").

Plaintiff maintains that Defendants violated his constitutional rights by omitting material information from the warrant affidavit.  There is no evidence that Defendants were not trained in the ordinary police investigative techniques.  See United States v. Cline, 349 F.3d 1276, 1281 (10th Cir. 2003) (describing a search warrant as an "ordinary investigative technique").   In fact, the following evidence regarding Defendants' general police backgrounds is undisputed:

1. Sgt. Cramer has been employed with the Lincoln County Sheriff's Office ("LCSO") since June 19, 2000. He worked as a Deputy Sheriff from June 19, 2000 through May 4, 2005.  On May 5, 2005, he was promoted to the rank of sergeant.

2. In the summer of 2006, Sgt. Cramer was assigned to the Lincoln County Narcotics Enforcement Unit ("LCNEU"). He briefly left the

LCNEU in early 2007 but returned in March, 2007. In August, 2007, Sgt. Cramer was appointed Commander of the LCNEU.

3.     Prior to his employment with the LCSO, Sgt. Cramer was employed by the Findlay, Ohio Police Department as a law enforcement officer. He retired from the Findlay Police Department on June 2, 2000 after sixteen years of service. At the time of his retirement, his rank was Lieutenant.

4.     Prior to his employment with the Findlay Police Department, Sgt. Cramer was employed as a law enforcement officer with various police departments and sheriff's departments in Ohio. From 1979 - 1985 he served as the Chief of Police of the Deshler, Ohio Police Department.

5.     Sgt. Cramer is a certified law enforcement officer in the State of New Mexico.

6.     On August 17, 2007, Sgt. Cramer completed an eighty hour Basic Narcotics Investigation training at the Midwest Counterdrug Training Center in Johnston, Iowa.

7.     Officer Snodgrass began working as a police officer with the Ruidoso Police Department in December, 2007.

8.     Prior to his employment with the Ruidoso Police Department, Officer Snodgrass served with the United States Coast Guard for six years.

9.     During his time with the Coast Guard, Officer Snodgrass attended a 14-week mixed police basic training course at the Federal Law Enforcement Training Center in Glenco, Georgia, served three and a half years in Kodiak, Alaska as a military police officer and was part of a counterterrorism task force working with the Border Patrol and the Sheriff's Department in Los Angeles County, California.

[Doc 66 at 6-8] There is certainly no evidence proffered that there was a failure to provide

specific training on the drafting of warrant affidavits or evidence that "the need for more or

different training [was] so obvious, and the inadequacy so likely to result in the violation of

[his due process] rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need for additional training." Porro, 624 F.3d at 1328 (alterations in original) (internal quotation marks and citations omitted).

## B.      Personal Capacity Claims

Persons sued in their individual capacity under this civil-rights statute generally are entitled to qualified immunity unless it is shown that their actions violated a specific federal statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue. See Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741, 745 (2002); accord Holland v. Harrington, 268 F.3d 1179, 1197 (10th Cir. 2001). The "salient question" is whether the state of the law at the time of the incident gave the defendants "fair warning" that their conduct was unconstitutional. Hope, 536 U.S. at 741.

Turning first to the question of a constitutional violation, Plaintiff's particular claim under Section 1983 arises from the allegedly materially false statements set forth in the arrest warrant affidavit. On this subject our Circuit has explained that

> It has long been clearly established that the Fourth Amendment's warrant requirement is violated when 'a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' if the false statement is necessary to a finding of probable cause.

Clanton v. Cooper, 129 F.3d 1147, 1154 (10th Cir. 1997) (quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).  A "a classic Franks violation" exists when an officer, in a warrant affidavit, knowingly and intentionally swears something to be true, all the while knowing that it is false.  Clanton, 129 F.3d at 1154.

In the Clanton case, for example, the plaintiff alleged that "the defendants had intentionally manufactured false evidence against [the plaintiff] (Michael Eaves's oral statement), and had intentionally made false statements about the plaintiff  (that she was 'possibly involved in a homicide still under investigation'), and that these intentional actions had caused [the plaintiff's] false arrest and subsequent imprisonment.")  Id. at 1152. Eventually, the oral statement was recanted, and the plaintiff alleged that the defendants had coerced the statement.  Id.  The district court found that the defendants were not entitled to qualified immunity because the parties materially disputed whether the defendants knowingly swore to the veracity of the false confession, and the Circuit affirmed that on that basis.  Id. at 154-55.

Plaintiff alleges that the warrant affidavit "materially misstated and mischaracterized the known truth by omitting the facts as to how the identity of John D. Bartlett was discovered." [Doc 1 at 4]  Plaintiff further maintains that Defendant Snodgrass identified a photograph of John A. Bartlett *before* he was arrested and swore that John A. was the drug

dealer, and then he subsequently identified a photograph of John D. Bartlett and swore that John D. was the drug dealer.  [Doc ]  When it was discovered that John A. Bartlett was the wrong man, Plaintiff posits that Defendant Cramer brought photos of both John A. and John D. to Defendant Snodgrass and instructed Defendant Snodgrass to identify John D. as the seller.  Thus, Plaintiff contends that both Defendants knowingly identified John D. in the warrant affidavit, even though they knew he was not the drug dealer, based on the purported earlier identification of John A. Bartlett.  Both Defendants deny that Defendant Snodgrass identified a photo of John A. prior to his arrest, and both Defendants deny that they colluded to knowingly wrongly identify John D. Bartlett.

For support, Plaintiff relies entirely on a portion of Defendant Cramer's preliminary hearing testimony.  Defendant Cramer was asked, "Officer Snodgrass indicates that you typed up the complaint statement of probable cause, affidavit for arrest warrant for John A. Bartlett, handed it to him for his signature?" and Defendant Cramer responded, "That's correct."  [May 2, 2011oc 69-7 at 6]  The next question was, "Where did you come up with the name Bartlett?" and he responded as follows:

> Bartlett was given to us by the confidential informant who obtained the name somewhere else.  I don't know where he got the name.  We then obtained the photograph we showed Agent Snodgrass, said yes, that's the guy.  The information apparently came from . . . and I don't know this because I don't actually know where the information came from.  Came from the records at the Ruidoso Police Department.

[Doc 69-7 at 6]  Defendant Cramer continued and explained that the confidential informant "[s]aid I think the guy's name is Bartlett.  And at that point we went and obtained a photograph, which Agent Snodgrass said, yes, that's the guy."  [Id.]

Both Defendants contend that this testimony is misleading and confusing, because it was not clear to which John Bartlett the question and answer referred.  [Doc 76 at 4-5; Doc 72 at 3]  Defendant Snodgrass explains that "at first blush it might appear that the photograph Sergeant Cramer is referring to is a photograph of John A. Bartlett, [but] Sergeant Cramer did not say which John Bartlett the photo depicted, and counsel did not ask him."  [Doc 72 at 2]  Nevertheless, Plaintiff's reading of the preliminary hearing transcript is reasonable. Defendant Cramer provided a sequential narrative, moving from his meeting with Defendant Snodgrass, to any effort to track down the vehicle, to the drafting of the arrest warrant for John A. Bartlett, to a question regarding how Defendant Cramer "came up with the name Bartlett."  [Doc 69-7 at 5-6]  At that point, Defendant Cramer gave the answer that is set forth above—an answer that appears to be that the name Bartlett came from the confidential informant, he obtained a photograph, and Defendant Snodgrass identified the photograph. [Id. at 6]  The testimony then continued with a discussion of following up on John A. Bartlett.  [Id. at 6-7]

Defendants further maintain that even if this confusing testimony can be read as Plaintiff reads it, the matter was later cleared up during Defendant Cramer's deposition. Specifically, during his deposition, Defendant Cramer testified that when a picture of John Bartlett was printed and shown to Defendant Snodgrass, it was a picture of John D. Bartlett.

[Doc 72-1 at 2]  This however, does nothing to discredit or explain the testimony from the preliminary hearing.  Instead, Defendant Cramer's testimony at his deposition simply creates a conflict in the evidence; at one point Defendant Cramer testified that when putting together the warrant for John A., he showed Defendant Snodgrass a photo and Snodgrass said "that's the guy."  At another point, Defendant Cramer testified that he only showed Defendant Snodgrass a photo of John D. Bartlett.  Thus, there is disputed evidence regarding whether Defendant Snodgrass deliberately and knowingly identified both John A. and John D. Bartlett as the drug dealer that he encountered in 2008.  See Seamons v. Snow, 206 F.3d 1021, 1027 (10th Cir. 2000) ("Given the conflicting testimony presented at the evidentiary hearing and contained in the depositions, we fail to see how the district court could reach these conclusions without resolving factual disputes—something it cannot do at this stage of the proceedings.").  Further, in the photos presented to this Court as evidence, the photo of John A. has a handwritten notation:  "wrong guy."  [Doc 69-14 at 1]  This could be reasonably read as an instruction or a reminder, which strengthens the inference that Defendant Snodgrass did not independently identify John D. Bartlett.

Even apart from Plaintiff's evidence that both Defendants knowingly swore that John D. Bartlett sold drugs to Defendant Snodgrass, there is also sufficient evidence from which a reasonable jury could find that both Defendants drafted, signed, and submitted the warrant affidavit for John D. Bartlett with reckless disregard for the truth.  See Clanton, 129 F.3d at 1154 ("It has long been clearly established that the Fourth Amendment's warrant requirement is violated when a false statement knowingly and intentionally, or with reckless disregard for

the truth, was included by the affiant in the warrant affidavit if the false statement is necessary to a finding of probable cause." (internal quotation marks and citation omitted)). Plaintiff has provided evidence that Defendant Cramer relied entirely on the CI for the last name of the person who sold methamphetamine to Defendant Snodgrass—even after John A. Bartlett proved to be the wrong man.  There is evidence proffered that Defendant Cramer did not know the source of identifying information in the warrant affidavits and that Defendant Cramer submitted affidavits with nearly identical information and in identical form for both John A. and John D. Bartlett.  Defendant Cramer additionally did not include any of the information about the John A. Bartlett arrest in the John D. Bartlett affidavit.  By this investigative method, Defendant Cramer could simply work his way through all of the John Bartletts in the area.[2]   From this evidence presented by Plaintiff, a reasonable jury could infer that Defendant Cramer drafted the warrant affidavit for John D. Bartlett with reckless disregard for the truth.  See Beard v. City of Northglenn, Colo., 24 F.3d 110, 116 (10th Cir. 1994) ("[A] factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." (internal quotation marks and citation omitted)).

There is further evidence that Defendant Snodgrass possessed no information at all about either John A. or John D. Bartlett, apart from that information provided by Defendant Cramer, yet he signed both warrant affidavits and swore to their veracity.  In addition,

---

[2]  It is worth mentioning that there is evidence that the man who confessed to selling drugs to Officer Snodgrass was not named Bartlett and that his identity was obtained from Rogelio Lopez—the man who made the call to "John."

Defendant Snodgrass positively identified two men as the drug dealer in question, but a later confession implicated a third man, casting very serious doubt on his previous sworn identifications. This is again is sufficient evidence from which a reasonable jury could find or infer Defendant Snodgrass signed the warrant affidavit for John D. Bartlett with reckless disregard for the truth.

The remaining question is whether these disputed facts—regarding the timing of identifications and the misidentification of John D. Bartlett—are material. "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." Thomas v. Metro. Life Ins. Co., 631 F.3d 1153, 1160 (10th Cir. 2011). As earlier explained, Plaintiff has alleged that Defendants violated the Fourth Amendment by making knowing and intentional false statements in the warrant affidavit for John D. Bartlett and that those statements were necessary to a finding of probable cause. See Clanton, 129 F.3d at 1154; see also Taylor v. Meacham, 82 F.3d 1556, 1562 (10th Cir. 1996) (observing that "it is a Fourth Amendment violation to "knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause"); see also Beard, 24 F.3d at114 (applying the Franks standard "to an officers' decision to omit from his warrant affidavit information in his possession that is also critical to the showing of probable cause"). Specifically, Plaintiff contends that Defendants omitted from the John D. Bartlett warrant affidavit all of the information about the prior warrant affidavit for John A. Bartlett, including the fact that another person had allegedly already been identified by the case agent as the drug dealer in question.

"Where information has been omitted from an affidavit, [the Court] determine[s] the existence of probable cause by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant."  Id. (internal quotation marks and citation omitted).  If the warrant affidavit for John D. Bartlett had included the information about the previous alleged identification and arrest of John A. Bartlett, Defendant Snodgrass' sworn identification of John D. Bartlett as the drug dealer would have been suspect.  The only reference to "John Bartlett" in the John D. Bartlett warrant affidavit is as follows:

8.    Affiant waited at the Rogelio Lopez residence until a white male,
        later identified as John . . . Bartlett arrived.

9.    Affiant was introduced to John . . . Bartlett who then provided affiant
        two bags of crystalline substance in exchange for $180.00 in cash.

10.   Affiant the left the residence while John . . . Bartlett was still there.

[Doc 69-5 at 2]  The omitted information undermined Defendant Snodgrass' identification of John D. Bartlett, and that identification was the only evidence linking John D. Bartlett to the alleged crime.  See Bruning v. Pixler, 949 F.3d 352, 359 (10th Cir. 1991) (concluding that omissions in a warrant affidavit would have undermined the victim's identification of the plaintiff as the perpetrator, that the identification was the only evidence linking the plaintiff to the crime, and that without the identification, there was no probable cause that the plaintiff was the assailant).  As the only evidence connecting John D. Bartlett to the sale of methamphetamine, the identification was clearly

critical to a finding of probable cause.  <u>DeLoach v. Bevers</u>, 922 F.2d 618, 622 (10th Cir. 1990) ("Recklessness may be inferred from omission of facts which are 'clearly critical' to a finding of probable cause.").

Having determined that a reasonable juror could infer that Defendants knowingly omitted material information from the warrant affidavit or included information in the warrant affidavit with reckless disregard for the truth, the analysis turns to whether the law was clearly established.  There is no question that it has long been "a clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause."  <u>Stewart v. Donges</u>, 915 F.2d 572, 582-83 (10th Cir. 1990).


**III.    <u>CONCLUSION</u>**

The parties dispute a genuine material fact relating to whether Defendants violated Plaintiff's clearly established constitutional rights.  Accordingly, neither Defendant is entitled to qualified immunity at this juncture.    Plaintiffs failed to connect the alleged constitutional violations to their failure-to-train theory, and as a result, has not demonstrated that a reasonable jury could find that the municipality was the moving force behind his injuries.

**IT IS THEREFORE HEREBY ORDERED** that *Defendant Kenneth Cramer's Motion For Partial Summary Judgment On Plaintiff's Municipal Liability Claims* [Doc 66] is **GRANTED**.

**IT IS FURTHER ORDERED** that *Defendant Josh Snodgrass' Motion To Dismiss On Ground Of Qualified Immunity* [Doc 65] and *Defendant Kenneth Cramer's Motion For Partial Summary Judgment On The Basis Of Qualified Immunity* [Doc 67] are **DENIED**.

**SO ORDERED** this 30th day of June, 2011, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge